STATE OF NORTH CAROLINA v. JOE LEE BARNES

No. 814SC965

(Filed 6 April 1982)

1. **Rape and Allied Offenses § 6— second degree rape—requirement of vaginal intercourse—instruction on "sexual intercourse"**

   The trial court's instruction requiring a finding that defendant had "sexual intercourse" with the prosecutrix was a sufficient charge on the "vaginal intercourse" element of second degree rape where the State's evidence pertained only to the defendant having committed vaginal intercourse with the prosecutrix and not to any other form of copulative sexual intercourse, since the court's instruction could not have misled the jury into thinking it could convict defendant of second degree rape for having committed a form of sexual intercourse other than vaginal intercourse. G.S. 14-27.3(a).

2. **Rape and Allied Offenses § 6.1— second degree rape—failure to submit lesser offense of assault**

   The trial court in a prosecution for second degree rape did not err in failing to submit to the jury an issue as to the lesser included offense of assault where the State's evidence tended to show the essential elements of second degree rape, and where defendant presented evidence that he committed common law robbery, which includes violence or putting in fear, and that he did not have sexual relations with the prosecutrix, but he did not present evidence from which the jury could reasonably find him also guilty of assault.

   Judge BECTON dissenting.

APPEAL by defendant from *Barefoot, Judge.* Judgment entered 20 May 1981 in Superior Court, DUPLIN County. Heard in the Court of Appeals on 11 February 1982.

Defendant was charged in proper bills of indictment with second-degree rape, common law robbery, and assault with a deadly weapon with intent to kill. Defendant tendered pleas of

guilty to common law robbery, and not guilty to second-degree rape and assault with a deadly weapon with intent to kill. Upon a trial by jury, defendant was found guilty of second-degree rape and not guilty of assault with intent to kill and of assault with a deadly weapon with intent to kill. From a judgment imposing a prison sentence of not more than 40 nor less than 30 years, defendant appealed.

*Attorney General Rufus L. Edmisten, by Associate Attorney Wilson Hayman, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Malcolm R. Hunter, Jr. and Lorinzo L. Joyner, for defendant appellant.*

HEDRICK, Judge.

[1] By his first assignment of error, defendant argues, "The trial court committed reversible error by failing to instruct the jury that in order to convict the defendant of second degree rape it must find beyond a reasonable doubt that the defendant penetrated Ms. Newkirk's sex organ with his sex organ." Defendant contends that the court's instructions inadequately covered one element of second-degree rape, in that they stated merely that "the State must prove . . . that the defendant had sexual intercourse with Anna Newkirk."

"The judge must charge the essential elements of the offense." *State v. Hairr,* 244 N.C. 506, 509, 94 S.E. 2d 472, 474 (1956). The statutory definition of second-degree rape lists "vaginal intercourse" as an essential element of the offense. G.S. § 14-27.3(a). The question, therefore, is whether the court's instruction requiring a finding that defendant committed "sexual intercourse" was a sufficient charge on the "vaginal intercourse" element of second-degree rape. Although there is always sexual intercourse when there is vaginal intercourse, *State v. Vinson,* 287 N.C. 326, 215 S.E. 2d 60 (1975), *death sentence vacated,* 428 U.S. 902, 49 L.Ed. 2d 1206, 96 S.Ct. 3204 (1976), there are instances in which there may be sexual intercourse in a form other than vaginal intercourse. Hence, strictly speaking, the jury in the present case, following the court's instruction, could have found the defendant guilty of second-degree rape by finding that he

engaged in a form of copulative sexual intercourse other than the requisite vaginal intercourse. A charge to the jury, however,

> will be construed contextually as a whole, and when, so construed, it presents the law of the case in such a manner as to leave no reasonable cause to believe the jury was misled or misinformed, an exception thereto will not be sustained, even though the instruction might have been more aptly given in different form.

*State v. Davis*, 290 N.C. 511, 544-45, 227 S.E. 2d 97, 117 (1976). "The judge's words may not be detached from the context and the incidents of the trial and then critically examined for an interpretation from which erroneous expressions may be inferred." *State v. McWilliams*, 277 N.C. 680, 685, 178 S.E. 2d 476, 479 (1971).

At trial in the present case, the State's evidence pertained only to the defendant having committed vaginal intercourse with Ms. Newkirk, and not at all to any other form of copulative sexual intercourse. The State presented evidence tending to show that defendant "ravished" Anna Newkirk on 28 March 1981, that she was later examined by a physician on the same day of her confrontation with defendant and was found to have had a penetration of her vagina, and that on 28 March 1981 Ms. Newkirk told the Rose Hill Chief of Police that defendant raped her. Within the context of the trial, the court's instructions requiring a finding of "sexual intercourse" could not reasonably be believed to have misled the jury into thinking it could convict defendant of second-degree rape for having committed a form of sexual intercourse other than vaginal intercourse. Furthermore, "the law [does] not require that any particular words be used when stating the elements of the offense," *State v. Thacker*, 301 N.C. 348, 356, 271 S.E. 2d 252, 257 (1980), and "the term 'sexual intercourse' encompasses actual penetration" of the female sexual organ by the male sexual organ. *State v. Vinson, supra* at 342, 215 S.E. 2d at 71. We hold the instructions challenged by defendant sufficiently related the law of second-degree rape to the evidence presented, and this assignment of error is overruled.

[2] Defendant's next assignment of error is "[t]he trial court's failure to submit the offense of assault as a lesser included offense of second degree rape."

Where it is permissible under the bill of indictment to convict the accused of a lesser degree of the crime charged, *and there is evidence to support a milder verdict,* defendant is entitled to have the different permissible verdicts arising on the evidence presented to the jury under proper instructions. . . . Unless there is evidence of guilt of the lesser degree, however, the court should not submit it. . . . If all the evidence tends to show that the crime charged in the bill of indictment was committed, and there is no evidence tending to show commission of a crime of lesser degree, the court correctly refuses to charge on the unsupported lesser degree and correctly refuses to submit lesser degrees of the crime charged as permissible verdicts.

*State v. Allen,* 297 N.C. 429, 434, 255 S.E. 2d 362, 365 (1979) [Emphasis in original]. The mere contention that the jury might accept the State's evidence in part and might reject it in part will not suffice to require submission to the jury of a lesser degree. *State v. Capel,* 21 N.C. App. 311, 204 S.E. 2d 226, *cert. denied,* 285 N.C. 592, 205 S.E. 2d 724 (1974).

When, upon all the evidence, the jury could reasonably find the defendant committed the offense charged in the indictment, but could not reasonably find that (1) he did not commit the offense charged in the indictment and (2) he did commit a lesser offense included therein, it is not error to restrict the jury to a verdict of guilty of the offense charged in the indictment or a verdict of not guilty, thus withholding from their consideration a verdict of guilty of a lesser included offense.

*State v. Lampkins,* 286 N.C. 497, 504, 212 S.E. 2d 106, 110 (1975), *cert. denied,* 428 U.S. 909, 49 L.Ed. 2d 1216, 96 S.Ct. 3220 (1976). Further,

[w]here all of the evidence tends to show that the offense committed, if any, was that charged in the bill of indictment, and there is no evidence tending to show the commission of a lesser, included offense, except insofar as it is a necessary element of the offense charged, the court is not required to submit for the jury's consideration the possibility of a verdict of guilty of such lesser, included offense, or to instruct the jury concerning such lesser offense.

*State v. Roseman,* 279 N.C. 573, 580, 184 S.E. 2d 289, 294 (1971).

Assault against the person is a lesser included offense of rape. *State v. Jones,* 249 N.C. 134, 105 S.E. 2d 513 (1958). In the present case, however, the State presented evidence tending to show that defendant jumped on Anna Newkirk, covered her face with a pillow, and "ravished" her. This evidence constitutes un-contradicted evidence of the essential elements of second-degree rape. Defendant, on the other hand, testified as follows:

> The money was fixed in a little black bag, but the little black bag was unzipped. Seem like it was just sitting there for me and I seen the money and I snatched the money.

> It was just in a stack—two big stacks and I couldn't believe it. I stuck my hand and peeled it back tó see was it counterfeit or not. Just pulled it back. I said, "This is real money" to myself. It was $20 bills. There were a couple of rubber bands. It was two stacks of $20 bills.

> As I went to get the money, I snatched the money and I cuff-ed it down. She really didn't see this, and all at once seems like when I got ready to get the last stack to put it up underneath my pants, she started to holler and I seen the pillow—the pillow was right there beside me and I snatched the pillow and done one of the numbers just like that, and I got nervous and I throwed the pillow down just like that right in her face and took off. Only thing I could hear was, "Bring me my money back you strumpet" just like that and I left her in the house . . . .

> . . .

> I did not have any kind of sexual relations with Anna Newkirk. . . . I have pled guilty to robbery. I did not make any effort to choke Anna Newkirk. I put the pillow over her face in order for me to get the money and get out. I didn't even get that close to her to choke her.

This evidence does not amount to evidence of the lesser included offense of assault; rather, defendant's evidence only recapitulates his commission of the elements of the offense of common law robbery, to which he pled guilty; those elements are "the taking of money or goods with felonious intent from the person of another,

or in his presence, against his will, by violence or putting him in fear." *State v. Irwin,* 55 N.C. App. 305, 307, 285 S.E. 2d 345, 348 (1982). Defendant nowhere presents evidence of his having also committed an independent and distinct offense of assault, the elements of which, according to *State v. Sawyer,* 29 N.C. App. 505, 507, 225 S.E. 2d 328, 328 (1976), are

> "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." [Citations omitted.]

Defendant, therefore, presented evidence that he committed common law robbery, which includes violence or putting in fear, and that he did not have sexual relations with Ms. Newkirk. He did not present evidence from which the jury could reasonably find him also guilty of assault. His evidence of having no sexual relations with Ms. Newkirk goes only to the issue of whether defendant is guilty of second-degree rape or not guilty of second-degree rape. This assignment of error is without merit.

We hold defendant had a fair trial free of prejudicial error.

No error.

Judge HILL concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

G.S. 14-27.3 states that "[a] person is guilty of rape in the second degree if the person engages in *vaginal intercourse* with another person. . . ." (Emphasis added.) The pattern jury instructions on second degree rape state, in pertinent part, that the "State must prove . . . beyond a reasonable doubt that . . . the defendant engaged in *vaginal intercourse* with [another person]." N.C.P.I. — Crim. 207.20. (Emphasis added.) However, the trial court failed specifically to instruct that vaginal intercourse was required in this second degree rape case.

State v. Barnes

Believing that the trial court's instructions, in light of the evidence, allowed the jury to return a verdict of guilty of second degree rape without finding that the defendant penetrated the victim's sex organ with his sex organ, I dissent. The trial court's failure to instruct the jury on the element of vaginal intercourse was prejudicial because (1) there can be sexual intercourse in a form other than vaginal intercourse; (2) the evidence of penetration by a sex organ was, in the words of defendant, "weak and equivocal;" and (3) the trial court, when it erroneously gave instructions on second degree sex offense instead of second degree rape, equated "sexual intercourse" with "sexual act" and defined "sex act" as "penetration . . . by *an object* into the genital opening of the person's body." (Emphasis added.)

THE LAW

With the following statement by the majority, ante. page 2, I have no quarrel:

> Although there is always sexual intercourse when there is vaginal intercourse, [citation omitted], there are instances in which there may be sexual intercourse in a form other than vaginal intercourse. Hence, strictly speaking, the jury in the present case, following the court's instruction, could have found the defendant guilty of second-degree rape by finding that he engaged in a form of copulative sexual intercourse other than the requisite vaginal intercourse.

On the facts of this case it is not enough to assume that the trial court's instructions on "sexual intercourse" was a sufficient base for a finding of "vaginal intercourse." It is necessary to analyze the evidence and to analyze the effect of the judge's charge on the jury, especially considering the judge's erroneous charge to the jury.

THE EVIDENCE

After a good deal of coaxing, Mrs. Newkirk, the 89-year-old victim of the alleged rape, made two statements: "He ravished me" and he "just done what he wanted and I was underconscious then."[1] Mrs. Newkirk's conclusory testimony may be the result of

_____

1. The relevant questions and answers during Mrs. Newkirk's direct examination follow.

her embarrassment as the prosecutor suggested during his direct examination. On the other hand, Mrs. Newkirk may have been unconscious at the time and may not have known exactly what happened. And I deal here not with the credibility of a witness but with the trial judge's duty to instruct specifically on "vaginal intercourse" in view of Mrs. Newkirk's testimony and the following testimony from the physician who examined Mrs. Newkirk. Dr. Simpson testified that he had to use a vaginal speculum designed

Q. Tell the jury what he did other than just choking you. Did he do anything else?

A. Yes, sir—no, sir—just done what he wanted and I was under conscious then.

Q. What did he do?

A. You know.

MR. CRAFT: Objection. She said she was unconscious.

THE COURT: Overruled.

Q. (Mr. Thagard) Mrs. Newkirk, you're going to have to tell the jury what he did. I know it's embarrassing, but tell them what he did—to them. Tell them what he did to you.

A. I want to see that pillow.

Q. They didn't bring the pillow. They said they couldn't bring it.

A. Where is it?

Q. She's gone to get it, Mrs. Newkirk. Tell the jury what else he did to you. You've got to tell them, Mrs. Newkirk. Please tell the jury what else he did to you.

A. O.K., I will.

Q. Tell them.

A. I will.

Q. Will you go ahead and tell them now, please. Tell the jury what else he did to you.

A. Where's the judge? I can't see.

Q. Well, the jurors are sitting over there. Just tell them what else he did to you other than choking you.

A. He ravished me.

Q. He ravished you? Did you say he ravished you?

A. Yes.

for an immature young girl to examine Mrs. Newkirk; that there was a posterior (interior) vaginal tear, but no bruises upon the external genitalia; that because of the atrophied condition of the vagina, he was unable to say whether the tear occurred on the day of the alleged rape or not. Dr. Simpson then expressed the opinion, based on the interior tear, that something had, at some time, been inserted into the vagina to cause the tear, but specifically said, "I don't know whether the penetration was by a male organ or not," and that "[t]he penetration could have been made by some object or by a finger. . . ."

### THE COURT'S INSTRUCTIONS

After all the evidence was presented, the trial court mistakenly instructed the jury on the elements of second degree sexual offense, a violation of G.S. 14-27.5. The defendant was not indicted for second degree sexual offense, and it is not a lesser included offense of rape. In the erroneously given instruction, the trial court informed the jury that a "sexual act" is "any penetration however slight *by an object* into the genital opening of a person's body." (Emphasis added.) The trial court then equated "sexual intercourse" with "sexual act" by stating that the defendant would be guilty of second degree sexual offense if he "engaged in *sexual intercourse* with Anna Newkirk. . . ." (Emphasis added.)

At the conclusion of the instructions, the trial court's error was brought to its attention. The trial court then gave the following "curative" instruction.

THE COURT: Members of the jury, I am informed by the District Attorney that it should be second degree rape and I am going to charge you to that. Now, you will disregard what I have said to you with reference to second degree sexual offense. This is what you will be guided by.

Defendant has been accused of second degree rape, which is forcible sexual intercourse with a woman against her will. Now, I charge that for you to find the defendant guilty of second degree rape, the State must prove three things to you beyond a reasonable doubt. First, that the defendant had sexual intercourse with Anna Newkirk. Second, that the defendant used or threatened to use force sufficient to over-

come any resistance she might make. Third, that Anna Newkirk did not consent and it was against her will. So I charge that if you find from the evidence beyond a reasonable doubt that on or about March 28, 1981, Joe Lee Barnes by the use of force—a pillow and choking had sexual intercourse with Anna Newkirk without her consent and against her will, it would be your duty to return a verdict of guilty of second degree rape.

As can be seen, in describing what the jury must find in order to convict the defendant of rape, the trial court used the term "sexual intercourse," the same term it had used in its mandate in the erroneously given second degree sexual offense charge.

A specific instruction on vaginal intercourse may not be required in every rape prosecution. An instruction on "sexual intercourse" may be sufficient when there is plenary evidence before the jury that the female sex organ was penetrated by a male sex organ. *See State v. Thacker,* 301 N.C. 348, 355-56, 271 S.E. 2d 252, 257 (1980); *State v. Hensley,* 294 N.C. 231, 237-38, 240 S.E. 2d 332, 336 (1978); and *State v. Vinson,* 287 N.C. 326, 341-42, 215 S.E. 2d 60, 71 (1975), *death sentence vacated* 428 U.S. 902, 49 L.Ed. 2d 1206, 96 S.Ct. 3204 (1976). However, in the case *sub judice,* when the trial court erroneously instructed on second degree sexual offense and stated that sexual intercourse was the insertion of *any object* into the genitals of the other person, the trial court, in order to cure the erroneous instruction, should have defined vaginal intercourse as penetration of the female sex organ by a male sex organ. I believe the failure to define vaginal intercourse in the purportedly "curative" instructions, especially considering the testimony of Mrs. Newkirk and Dr. Simpson was error. For this reason, I believe the defendant should be awarded a new trial.